J-A05041-15

2015 PA Super 84

| BYOUNG SUK AN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| VICTORIA FIRE & CASUALTY CO., D/B/A TITAN AUTO INSURANCE AND MATTHEW GILMORE AND ZAINAB WALKER, | |
| Appellees | No. 2120 EDA 2014 |

Appeal from the Order Entered June 23, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-006320

BEFORE: GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

OPINION BY SHOGAN, J.:                                      **FILED APRIL 17, 2015**

Appellant, Byoung Suk An, appeals from the order dated June 20, 2014, and entered June 23, 2014, denying his motion for summary judgment.[1] On appeal, Appellant challenges the trial court's determination

---

[1] Both Appellant and Appellee, Victoria Fire and Casualty Company ('Victoria"), filed motions for summary judgment and the trial court disposed of each motion with a separate order. Both orders were dated June 20, 2014, and both were entered June 23, 2014. Appellant's notice of appeal stated that he was appealing the order denying his motion for summary judgment. Typically, an order denying a motion for summary judgment is interlocutory and not appealable. *French v. United Parcel Service*, 547 A.2d 411, 413 (Pa. Super. 1988). The procedural history of this case, however, presents us with a unique scenario. Here, the orders were executed on the same date and both were filed on the same date. While an appeal would properly lie from the trial court's order granting Victoria's motion for summary judgment, we deem Appellant's failure to identify that

*(Footnote Continued Next Page)*

that the "named driver only" automobile policy issued to Zainab Walker ("Walker") does not violate section 1718(c) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1718(c), and is not contrary to public policy. For the reasons that follow, we affirm.

On August 2, 2012, Appellant filed a complaint in the Montgomery County Court of Common Pleas against Matthew Gilmore ("Gilmore") and Walker. In the underlying complaint, Appellant alleged he was injured in a motor vehicle accident on March 20, 2011, which involved a vehicle owned by Walker and operated by Gilmore.[2] The complaint included a count against Gilmore for negligent operation of Walker's vehicle and a count against Walker for negligently entrusting her vehicle to Gilmore. At the time of the alleged accident, the motor vehicle owned by Walker was insured under a Pennsylvania Personal Automobile Policy ("Policy") issued by Titan

_(Footnote Continued)_ ─────────────

specific order, issued on the same date, as an oversight. Indeed, had the trial court issued a single order disposing of both motions for summary judgment, the appeal would be proper. Additionally, in conjunction with the trial court's decision to grant Victoria's motion for summary judgment, the issues in this case have been finally decided. Thus, based on the specific facts of this case, we interpret Appellant's notice of appeal to be from the trial court's order granting Victoria's motion for summary judgment and proceed to address the merits of his claims. "[I]nterests of judicial economy allow us to 'regard as done that which ought to have been done.'" **Hill v. Thorne**, 635 A.2d 186, 188 (Pa. Super. 1993) (quoting **McCormick v. Northeastern Bank of Pennsylvania**, 561 A.2d 328, 330, n. 1 (Pa. 1989)).

[2] The record reflects that Gilmore was a friend of Walker's teenage son, Aquil, and that Aquil had given Gilmore permission to drive the car at the time of the accident. Walker Deposition, 11/5/13, at 10-18.

Indemnity Company d/b/a Titan Auto Insurance and underwritten by Victoria Fire and Casualty Company ("Victoria").[3] The Policy did not provide liability coverage for any person not listed as a named driver on the Policy. Walker was the sole driver listed on the Policy.

Appellant filed an action for declaratory judgment on March 26, 2013, seeking a declaration by the court that Victoria had a duty to defend and provide insurance coverage to Walker and Gilmore for all claims arising out of the alleged motor vehicle accident. On February 12, 2014, Victoria filed a motion for summary judgment claiming it had no duty to defend or indemnify Walker or Gilmore because the Policy specifically stated that Victoria "will not provide coverage when the driver of your auto is not listed on the policy." Victoria's Motion for Summary Judgment, 2/12/14, at 3. Appellant subsequently filed a cross-motion for summary judgment on March 26, 2014, arguing the "named driver only" Policy violates section 1718(c) of the MVFRL and is against public policy. Appellant's Motion for Summary Judgment, 3/26/14, at 7-9. Oral argument on the cross-motions for summary judgment was held.

On June 23, 2014, the trial court entered an order denying Appellant's motion for summary judgment, and a separate order granting Victoria's

_____

[3] Appellant did not plead, and the record does not reflect, that Gilmore was insured by another motor vehicle insurance policy at the time of the accident or that he sought first party benefits.

- 3 -

motion for summary judgment, thereby dismissing Appellant's action for declaratory judgment. Appellant timely appealed.

Appellant presents the following issues for our review, which we set forth verbatim:

A. Whether the trial court committed an error of law and abused its discretion in finding that Victoria Fire & Casualty Company does not have a duty to provide insurance coverage and a defense to Matthew Gilmore and Zainab Walker for any and all claims arising out of a March 20, 2011 motor vehicle accident involving Byoung Suk An, including, but not limited to, claim number 80011002887 and the lawsuit filed by Byoung Suk An in connection therewith in the Montgomery County Court of Common Pleas, case number 2012-21107, when the "named driver only" coverage exclusion contained in the subject automobile insurance policy issued by Victoria Fire & Casualty Company conflicts with and is contrary to the "named driver exclusion" of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1718(c)(2), and is therefore invalid?

B. Whether the trial court committed an error of law and abused its discretion in finding that Victoria Fire & Casualty Company does not have a duty to provide insurance coverage and a defense to Matthew Gilmore and Zainab Walker for any and all claims arising out of a March 20, 2011 motor vehicle accident involving Byoung Suk An, including, but not limited to, claim number 80011002887 and the lawsuit filed by Byoung Suk An in connection therewith in the Montgomery County Court of Common Pleas, case number 2012-21107, when the "named driver only" coverage exclusion contained in the subject automobile insurance policy issued by Victoria Fire & Casualty Company conflicts with and is contrary to public policy in Pennsylvania, and is therefore invalid?

Appellant's Brief at 4-5.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

- 4 -

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Matharu v. Muir*, 86 A.3d 250, 255 (Pa. Super. 2014).

Appellant first argues that the trial court committed an error of law and abused its discretion in ruling that 75 Pa.C.S. § 1718(c) is inapplicable to the Policy in the present case. Appellant's Brief at 14. The trial court concluded that section 1718(c) refers to "named driver exclusion" policies which exclude a particular driver, as opposed to the situation presented in the Policy currently at issue, where only the named driver is provided coverage. Appellant contends that Victoria's "named driver only" coverage impermissibly expands the legislature's exclusion outlined in section 1718(c) to include "any person not listed as an insured on your policy" without requiring that the first named insured request that the person be excluded from coverage, or a determination as to whether the excluded person is

- 5 -

insured on another policy of motor vehicle liability insurance. *Id.* Appellant asserts that Victoria's Policy impermissibly rewrites section 1718(c) to exclude from coverage any person not listed as an insured, thereby turning section 1718(c)(2) "on its head." *Id.* at 17. Because the coverage exclusion at issue is repugnant to the MVFRL, Appellant contends, the Policy must be deemed invalid by this Court. *Id.* As such, Appellant maintains that he is entitled to judgment as a matter of law and that the trial court committed an error of law and abused its discretion by denying Appellant's motion for summary judgment. *Id.*

The legal principles to be applied in reviewing coverage questions arising under insurance contracts are well settled:

> The interpretation of an insurance policy is a question of law for the court. Our standard of review, therefore, is plenary. In interpreting the language of an insurance policy, the goal is "to ascertain the intent of the parties as manifested by the language of the written instrument." The polestar of our inquiry is the language of the insurance policy. When analyzing a policy, words of common usage are to be construed in their natural, plain, and ordinary sense. When the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language. Although a court must not resort to a strained contrivance or distort the meaning of the language in order to find an ambiguity, it must find that contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer.

*Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa. Super. 2007) (internal citations omitted). Further, courts should not "under the guise of judicial interpretation," expand coverage beyond that provided in

the policy. *Guardian Life Ins. Co. of America v. Zerance*, 479 A.2d 949, 953 (Pa. 1984).

A "named driver exclusion" in an automobile policy excludes coverage in a situation where coverage under the policy would otherwise be extended. *See*, *e.g*., *Donegal Mutual Insurance Co. v. Fackler*, 835 A.2d 712, 717 (Pa. Super. 2003) (exclusion applied to the use of a motor vehicle "to which the terms of the policy would ordinarily be extended" and "whether or not such operation was with the express or implied permission of a person insured under [the] policy.") Section 1718(c) of the MVFRL specifically addresses such exclusions, as follows:

> (c) **Named driver exclusion**.--An insurer or the first named insured may exclude any person or his personal representative from benefits under a policy enumerated in section 1711 or 1712 when any of the following apply:
>
> > (1) The person is excluded from coverage while operating a motor vehicle in accordance with the act of June 5, 1968 (P.L. 140, No. 78), relating to the writing, cancellation of or refusal to renew policies of automobile insurance.
> >
> > (2) The first named insured has requested that the person be excluded from coverage while operating a motor vehicle. This paragraph shall only apply if the excluded person is insured on another policy of motor vehicle liability insurance.

75 Pa.C.S. § 1718(c).

A review of Walker's application for coverage and Policy reveals the following. On February 12, 2011, Walker executed and signed a Titan Lite Pennsylvania Auto Application ("Application"). Application, 2/12/11. In the

Application, Walker agreed to and initialed the following applicant warranties:

1. I have LISTED all persons who will be permitted at any time to operate any vehicle that is either identified on the Declarations or added to the policy after the date of application.

2. A person that is NOT LISTED or disclosed to my agent (see number 3 below) WILL NOT be permitted at any time to operate any vehicle that is either identified on the Declarations or added to the policy after the date of the Application.

3. I will notify my agent before any person that is not LISTED is permitted at any time to operate my vehicle that is either identified on the Declarations or added to the policy after the date of the Application.

*Id.* at 8 (unnumbered pages). In the questionnaire section of the Application, Walker initialed and agreed to the following statement:

11. I understand that the policy being applied for WILL NOT provide coverage when a vehicle listed in the Vehicle Information section of the Application is being operated by any driver that is NOT LISTED in the Driver Information section of the application.

*Id.* at 8.

That Application also included the following statement:

APPLICANT'S STATEMENT – READ BEFORE SIGNING
WARNING

PLEASE NOTE: In order for us to offer you this low cost Lite product, your policy contains a number of coverage restrictions. This policy will not provide coverage when the driver of your auto is not listed on the policy. This policy will not provide coverage when you are driving a vehicle other than those listed on the Declaration page. Automatic coverage for a newly

acquired auto is also restricted to 72 hours after the purchase or lease of that auto.

*Id.* at 5. Walker was the only driver identified on the Application. *Id.* at 1.

Based on the Application, Victoria issued the Policy to Walker. The Policy included the following statement:

Pennsylvania Personal Automobile Policy

PLEASE NOTE: IN ORDER FOR US TO OFFER YOU THIS LOW-COST EXPRESS PRODUCT, YOUR POLICY CONTAINS A NUMBER OF COVERAGE RESTRICTIONS. THIS POLICY WILL NOT PROVIDE COVERAGE WHEN THE DRIVER OF YOUR AUTO IS NOT LISTED ON THE POLICY.

Policy, 4/24/13, at 1. Additionally, the following provision was included under the "auto liability" heading:

AUTO LIABILITY
(for damage or injury to others caused by your auto)

COVERAGE AGREEMENT

* * *

COVERAGE EXCLUSIONS

This coverage does not apply to:

1. Bodily injury or property damage arising out of the ownership, maintenance or use of your auto by any person not listed as an insured on your policy.

*Id.* at 5-6. As noted, Walker was the only driver identified in the Policy.

As previously discussed, section 1718(c) addresses policies wherein an insured specifically excludes a driver who would otherwise be covered from benefits under the policy. An insured can exclude the named driver when

circumstances outlined in either subsection 1718(c)(1) or (2) apply. 75 Pa.C.S. § 1718(c). A review of Walker's Policy, however, reveals that the Policy did not include a named driver exclusion as outlined in 75 Pa.C.S. § 1718(c). Instead, Walker's Policy provided coverage **only** for the **driver named** in the Policy. As was clearly outlined for Walker in the Application and memorialized in the Policy, coverage was provided to the named driver only, in exchange for substantially reduced premiums paid by Walker.

Thus, the Policy at issue does not conflict with, nor is it contrary to, section 1718(c), as alleged by Appellant. Rather, section 1718(c) is inapplicable to the Policy in this case. The "named driver only" Policy is not contemplated by section 1718(c).[4]

Following Appellant's argument to its logical end, pursuant to section 1718(c)(2), an insurer would not be liable for damages caused by any (and every) driver **only if** any (and every) driver was 1) specifically excluded by the named insured and 2) was insured under another policy. Such a

---

[4] Our research has revealed no specific provision in the MVFRL or Pennsylvania state case law addressing a "named driver only" insurance policy. For purposes of this discussion, we note that our research revealed an unpublished federal district case, ***Infinity Indem. Ins. Co. v. Gonzalez***, 2012 WL 1994772 (E.D. Pa. 2012), applying Pennsylvania law, that addresses both the "named driver only" policy and the "named driver exclusion." That court explained that "named driver exclusions" exclude a specific, identifiable individual or risk. "Named driver only" policies, conversely, provide coverage only for the identified person. The federal district court concluded that the "named driver only" policies were not invalid. ***Id.*** at *4.

requirement is absurd, and we cannot conclude that this was intended in the drafting of section 1718(c) of the MVFRL. **See** 1 Pa.C.S. § 1922(1) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). Appellant's attempt to interpret a "named driver only" policy within the strictures of section 1718(c), that addresses "named driver exclusion" provisions, is misdirected, as is evidenced by the absurd conclusion of the argument identified above. Simply put, the "named driver exclusion" provision contemplated by section 1718(c) and "named driver only" policies are entirely different creatures.

Accordingly, Appellant's assertion that the Policy provided by Victoria improperly stretches the provisions of section 1718(c) is unfounded. We hold that section 1718(c) is inapplicable to the Policy at issue in this case. We further conclude that the Policy language is clear and unambiguous in limiting coverage only to the named driver. As a result, we cannot agree that the trial court erred or abused its discretion in determining that section 1718(c) did not apply and in subsequently denying Appellant's motion for summary judgment and granting Victoria's motion for summary judgment.

Appellant next argues that the "named driver only" Policy at issue in this case conflicts with, and is contrary to, public policy in Pennsylvania, and is therefore invalid. Appellant's Brief at 18. Appellant maintains that a

corollary to the cost containment aims behind the MVFRL, as identified by the trial court, is the concern about limiting the number of uninsured motorists on Pennsylvania highways. *Id.* It is Appellant's position that Victoria's "named driver only" policies increase the number of uninsured motorists on Pennsylvania roads to the extent that Victoria denies coverage to "any person not listed as an insured on your policy" without reference to whether the excluded person is insured on another liability insurance policy. *Id.* at 19. This is the very situation addressed by section 1718(c)(2), Appellant contends, with its requirement that an excluded person be insured on another policy of motor vehicle liability insurance in order for the "named driver exclusion" to apply. *Id.*

"In construing a policy of insurance, we are required to give plain meaning to a clear and unambiguous contract provision unless such provision violates a clearly expressed public policy." *Williams v. GEICO Government Employees Ins. Co.*, 32 A.3d 1195, 1199-1200 (Pa. 2011). Our Supreme Court has consistently been reluctant to invalidate contractual provisions due to public policy concerns. *Id.* at 1200.

> Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract. As this Court has stated:
>
>> Public policy is to be ascertained by reference to the laws and legal precedents and not from general

considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

\* \* \*

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Id.* (quoting ***Eichelman v. Nationwide Ins. Co.***, 711 A.2d 1006, 1008 (Pa. 1998)). Additionally, Pennsylvania public policy regarding automobile insurance has been codified by the Pennsylvania MVFRL. ***See Erie Ins. Exchange v. Baker***, 972 A.2d 507, 511 n.7 (Pa. 2008) ("[A]n enactment by the legislature- such as the MVFRL– is indeed the embodiment of public policy.").

Our Supreme Court had the opportunity to address public policy concerns arising from the interpretation of automobile insurance policies in ***Progressive Northern Ins. Co. v. Schneck***, 813 A.2d 828 (Pa. 2002). The insured in ***Schneck*** had named her husband as an excluded driver pursuant to section 1718(c)(2) because he had a suspended driver's license.

*Id.* at 219. In recognizing the exclusion as being consistent with public policy, the Court stated that:

> The overarching public policy of the Motor Vehicle Financial Responsibility Law (MVFRL) is concern over the increasing cost of insurance premiums . . . [t]his public policy is exemplified by [75 Pa.C.S.] § 1718(c), which permits named driver exclusions. These exclusions are designed by insurers to avoid covering someone with a bad driving record or in a high-risk category . . . since the premium for such coverage would be exceedingly high.

*Id*. at 831-832 (internal citations omitted). The Court thus concluded that the "to the extent that a named driver exclusion operates to bar UM/UIM coverage because of foregone liability coverage, the result is consistent with the public policy of cost containment and consumer choice." *Id.* at 832. In so holding, the Court reiterated its observation that "[w]hile cost containment is not the only objective of the statute, it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of this objective." *Id. See also Fackler*, 835 A.2d at 717 (in holding that the "named driver exclusion" was valid and that the insurance company was not obligated to defend, indemnify or provide liability coverage to the driver or insured, this Court found that the exclusion was "completely consistent" with the public policy of the MVFRL as set forth by our Supreme Court).

Although the above cases dealt with "named driver exclusions," we find them to be instructive in addressing the issue presented by this matter.

Thus, we hold that the provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy. We cannot conclude that this type of policy is "so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it." ***Williams***, 32 A.3d at 1200. Therefore, we may not constitute the voice of the community in declaring that the contract is against public policy. Any such determination is a question for the legislature. ***Id.*** ("In the absence of a plain indication of [dominant public] policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action."). Accordingly, Appellant is entitled to no relief on his second claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015

- 15 -